IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM HORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 13-1032-JDT-egb |
| | ) | |
| CHUCK ARNOLD, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS*
ORDER ASSESSING $350 CIVIL FILING FEE
ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL
ORDER OF DISMISSAL
AND
ORDER GRANTING LEAVE TO AMEND

On January 29, 2013, the Clerk received a *pro se* complaint pursuant to 42 U.S.C. § 1983 purportedly filed jointly by sixteen Plaintiffs: William Horton, Chris Cook, Adonis Bill, Jesse James, James W. Maitland, Johnathon Gordon, Jacoby Pearson, Malcolm Lee, Mike Horton, Clarence Combs, Roy Newberry, Darryl Walker, Jeffrey Anderson, Jeff Webb, John Palmer, and William Moore. (Docket Entry 1.) All of the Plaintiffs were, at the time, inmates at the Gibson County Correctional Complex ("Jail") in Trenton, Tennessee. The complaint appeared to be signed by all of the Plaintiffs, but only Plaintiff William Horton submitted an *in forma pauperis* affidavit and inmate trust account statement in accordance

with 28 U.S.C. § 1915(a)(1)-(2). (D.E. 2.) On February 21, 2013, he filed a "Motion to Change to Class Action Law Suit." (D.E. 5.)

On May 13, 2013, the Court denied the motion to certify a class, severed the Plaintiffs' claims, and directed the Clerk to open a new case for each of the other fifteen Plaintiffs, leaving William Horton as the only Plaintiff in this case. (D.E. 7.) The Clerk shall record the Defendants as Gibson County Sheriff Chuck Arnold, Sherry Jo Smith, Jeff Maitland, Sergeant Charles Simpson, Sergeant Ben Lee, Melissa Hunt, Renee Terrell, Mike Webb, and Gibson County.[1]

Under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a)-(b), a prisoner bringing a civil action must pay the full filing fee required by 28 U.S.C. § 1914(a). The *in forma pauperis* statute, 28 U.S.C. § 1915(a), merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, Plaintiff has properly completed and submitted an *in forma pauperis* affidavit and a copy of his inmate trust fund account statement for the six months prior to the commencement of this action. The motion to proceed *in forma pauperis* is GRANTED in accordance with the terms of the PLRA.

Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that Plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust account

---

[1] The Court construes the allegations about the Gibson County Sheriff's Department as an attempt to assert a claim against Gibson County.

officer at Plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to Plaintiff's trust account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust account officer shall collect them and pay them directly to the Clerk of the Court. If the funds in Plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the Plaintiff's account and forward them to the Clerk of the Court.

On each occasion that funds are subsequently credited to Plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10, until the $350 filing fee is paid.

Each time the trust account officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and submit it to the Clerk along with the payment. All payments and accounts statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee
111 S. Highland Ave., Rm. 262, Jackson, TN  38301

and shall clearly identify Plaintiff's name and the case number as included on the first page of this order.

If Plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately, in writing, of his change of address. If still confined, he shall provide the officials at the new facility with a copy of this order. If Plaintiff fails to abide by these or any other requirements of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at Plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the Gibson County Sheriff to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

On February 12, 2013, Plaintiff filed a motion seeking the appointment of counsel in this matter. (D.E. 4.) Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, "[t]he appointment of counsel in a civil proceeding is not a constitutional right." Lanier v. Bryant, 332 F.3d 999, 1006 (6th Cir. 2003); see also Shepherd v. Wellman, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit."); Lavado v. Keohane, 992 F.2d 601, 605-06 (6th Cir. 1993) (no constitutional right to counsel in a civil case); Farmer v. Haas, 990 F.2d 319, 323 (7th Cir. 1993) ("There is no constitutional or . . . statutory right to counsel in federal civil cases . . . .") (1993).

Appointment of counsel is "'a privilege that is justified only by exceptional circumstances.'" Lavado, 992 F.2d at 606 (quoting Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985)).

> In determining whether "exceptional circumstances" exist, courts have examined "the type of case and the abilities of the plaintiff to represent himself." Archie v. Christian, 812 F.2d 250, 253 (5th Cir. 1987); see also Poindexter v. FBI, 737 F.2d 1173, 1185 (D.C. Cir. 1984). This generally involves a determination of the "complexity of the factual and legal issues involved." Cookish v. Cunningham, 787 F.2d 1, 3 (1st Cir. 1986).

Id. at 606. Appointment of counsel is not appropriate when a *pro se* litigant's claims are frivolous or when his chances of success are extremely slim. Id. (citing Mars v. Hanberry, 752 F.2d 254, 256 (6th Cir. 1985)); see also Cleary v. Mukasey, 307 F. App'x 963, 965 (6th Cir. 2009) (same).[2]

Plaintiff has not satisfied his burden of demonstrating that appointment of counsel would be appropriate in this case. Nothing in Plaintiff's motion distinguishes this case from numerous other cases litigated by *pro se* prisoners who are untrained in the law. The motion for appointment of counsel is DENIED.

The complaint alleges that Plaintiff has written letters to various persons about the conditions at the Jail. Specifically, the complaint alleges:

> We are getting discriminated on medical needs, this facility has mold in the showers. We are not getting the proper food some inmates need to be on modified diets, we don't get milk products. We [don't] have the right cleaning sanitazer [sic] for [] too [sic] kill the Hiv, "Staff [sic] infection" which some inmates have, also hepatitis[. W]e don't have the proper issued clothes or footwear. We are not getting 1400 cal a day[.] This facility is really nasty[.]

---

[2] These factors are important, because § 1915(e)(1) "does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants. Mallard v. United States Dist. Ct., 490 U.S. 296, 310 (1989).

> TCA 44-4-140 Medical Services 1400-1-13 from TCI say we shouldn't get denid [sic] medical.

(D.E. 1 at 2.)

An attachment to the complaint indicates that some inmates complained to the Jail Administrator, who promised to give them the proper cleaning products but then failed to do so. (Id. at 4.) "Some inmates have broken bones which they [won't] send you to an outside doctor to get it fixed." (Id.) "Some inmates need teeth pulled some need mouth surgery and other medical needs . . . ." (Id. (emphasis omitted).) Some inmates got indigent packs, but Jail staff removed the soap from the packages. Some inmates do not have the funds to buy soap. (Id.) The prayer for relief seeks money damages and the termination of unspecified officers. (Id. at 3.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

>   (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
>   (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009), and in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007), are applied. Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-

pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'"  Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681).  "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally."  Hill, 630 F.3d at 470 (citing Neitzke v. Williams, 490 U.S. 319, 325 (1989)).  "Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted."  Id. (citing Neitzke, 490 U.S. at 328-29).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief.  Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.  Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.

Id. at 471 (citations and internal quotation marks omitted).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." Williams, 631 F.3d at 383 (quoting Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, No. 09-5480, 2011 WL 1827441, at *4 (6th Cir. May 12, 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue."); *cert. denied*, 132 S. Ct. 461 (2011).

To state a claim under 42 U.S.C. § 1983,[3] a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

The allegations of Plaintiff's complaint are entirely conclusory and do not state a plausible claim for relief. There are no factual allegations against any of the numerous named defendants. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570.

Plaintiff lacks standing to sue for deprivations of the rights of his fellow inmates. "To state a case or controversy under Article III [of the United States Constitution], a plaintiff must establish standing." Ariz. Christian Sch. Tuition Org. v. Winn, ___ U.S. ___, 131 S. Ct. 1436, 1442 (2011).

> [T]he irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact" — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

---

[3] Section 1983 provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks, footnote & citations omitted); see also Lance v. Coffman, 549 U.S. 437, 439 (2007) (same). "In requiring a particular injury, the Court meant 'that the injury must affect the plaintiff in a personal and individual way.'" Winn, 131 S. Ct. at 1442 (quoting Lujan, 504 U.S. at 560 n.1). Unless Plaintiff suffered an actual injury, he "was not the aggrieved party, [and] he lacks standing" to sue. Percival v. McGinnis, 24 F. App'x 243, 246 (6th Cir. 2001); see also Corn v. Sparkman, No. 95-5494, 1996 WL 185753, at *1 (6th Cir. Apr. 17, 1996) ("A prisoner cannot bring claims on behalf of other prisoners. A prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights." (citation omitted)).

The complaint does not allege that Plaintiff was personally injured by some of the conditions described in the complaint. There is no allegation that Plaintiff requires a modified diet, that he has an untreated infection, that he needs to have teeth pulled or oral surgery, or that he has broken a bone and received no medical treatment. There also is no allegation that Plaintiff has been deprived of soap.

The complaint also does not allege a valid claim under the Eighth Amendment, which prohibits cruel and unusual punishment. See generally Wilson v. Seiter, 501 U.S. 294 (1991).[4] An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hudson v. McMillian, 503 U.S. 1, 8 (1992);

---

[4] Convicted inmates' rights stem from the Eighth Amendment, while pre-trial detainees' rights stem from the Fourteenth Amendment. Thompson v. Cnty. of Medina, 29 F.3d 238, 242 (6th Cir. 1994); Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985). Even if Plaintiff was a pretrial detainee during the events at issue, the Court will analyze his claims under Eighth Amendment principles because the rights of pretrial detainees are equivalent to those of convicted prisoners.

10

Wilson, 501 U.S. at 298; Williams v. Curtin, 633 F.3d at 383; Mingus v. Butler, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." Farmer, 511 U.S. at 834; Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834; see also Miller v. Calhoun Cnty., 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," Wilson, 501 U.S. at 298 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)); see also Hadix v. Johnson, 367 F.3d 513, 525 (6th Cir. 2004). The Constitution "'does not mandate comfortable prisons.'" Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 349). "[R]outine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" Hudson, 503 U.S. at 9 (quoting Rhodes, 452 U.S. at 347). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." Id.

In considering the types of conditions that constitute a substantial risk of serious harm, the Court evaluates not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, *i.e.*, that society does not choose to tolerate the risk in its prisons. Helling v. McKinney, 509 U.S. 25, 36 (1993). The Supreme Court has also emphasized that prisoners can rarely establish an Eighth Amendment violation from a

11

combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation:

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise — for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

Wilson, 501 U.S. at 304-0 (emphasis in original; citation omitted); see also Thompson v. Cnty. of Medina, Ohio, 29 F.3d 238, 242 (6th Cir. 1994) ("Eighth Amendment claims may not be based on the totality of the circumstances, but rather must identify a specific condition that violates" a particular right); Carver v. Knox Cnty., Tenn., 887 F.2d 1287, 1294 (6th Cir. 1989).

The vague and conclusory allegations of the complaint are insufficient to establish that any of the conditions at issue presents a sufficient threat to Plaintiff's health or safety to rise to the level of an Eighth Amendment violation. There are no factual allegations explaining why Plaintiff believes that he has been exposed to the HIV virus, hepatitis, or staph infections. There also is no explanation why he believes he is receiving less than 1400 calories per day. The complaint does not sufficiently allege that the conditions at issue affected Plaintiff personally and injured, or threatened to injure, his health.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he or she had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834; see also Wilson, 501 U.S. at 297, 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303; Helling, 509 U.S. at 32; Woods v. Lecureux, 110 F.3d 1215,1222 (6th Cir. 1997); Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996); Taylor v. Mich. Dep't of Corr., 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38 (emphasis added; citations omitted); see also Garretson v. City of Madison Heights, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the

13

Fourteenth Amendment."). The Court must evaluate whether Defendant "had the personal involvement necessary to permit a finding of subjective knowledge." Bishop v. Hackel, 636 F.3d 757, 768 (6th Cir. 2011).

The complaint does not adequately allege that any Defendant was deliberately indifferent to any serious risk to Plaintiff's health. As previously noted, the complaint contains no factual allegations against any of the named Defendants. The positions held by each Defendant at the Jail are not specified. Although there are allegations about the Jail Administrator, it is unclear which of the Defendants holds that position.

Defendant Arnold cannot be held liable as a supervisor. Under U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 556 U.S. at 676; see also Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." Iqbal, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

Bellamy, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. Grinter v. Knight, 532 F.3d 567, 575-76 (6th Cir. 2008); Gregory v. City of Louisville, 444 F.3d 725, 751 (6th Cir. 2006); Shehee v. Luttrell, 199 F.3d 295,

300 (6th Cir. 1999); Lillard v. Shelby Cnty. Bd. of Educ., 76 F.3d 716, 727-28 (6th Cir. 1996). The complaint does not allege that Defendant Arnold, through his own actions, violated Plaintiff's rights.

The complaint does not assert a valid claim against Gibson County. When a § 1983 claim is made against a municipality or other local governmental entity, the court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (1992). The second issue is dispositive of Plaintiff's claim against Gibson County.

A local government "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't. of Soc. Serv., 436 U.S. 658, 691 (1978) (emphasis in original); see also Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994); Berry v. City of Detroit, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. Monell, 436 U.S. at 691-92; Deaton v. Montgomery Co., Ohio, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." Alkire v. Irving, 330 F.3d 802, 815 (6th Cir. 2003) (citing Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not

received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." Alkire, 330 F.3d at 815 (quoting Monell, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." Searcy, 38 F.3d at 286 (quoting Polk Co. v. Dodson, 454 U.S. at 326 (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 138 (1988) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479-80 (1986)).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, see, e.g., Fowler v. Campbell, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); Oliver v. City of Memphis, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); cf. Raub v. Corr. Med. Servs., Inc., No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); Chidester v. City of Memphis, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). The complaint does not allege that Plaintiff suffered any injury arising from an unconstitutional policy or custom of Gibson County.

Therefore, Plaintiff's complaint is subject to dismissal for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

The Sixth Circuit recently held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. LaFountain v. Harry, ___ F.3d ___, 2013 WL 2221569, at *5 (6th Cir. 2013); see also Brown v. R.I., No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. Brown, 2013 WL 646489, at *1; Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand."); Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").

In this case, the Court cannot conclude that any amendment would be futile as a matter of law. Therefore, leave to amend is GRANTED. Any amendment must be filed within thirty (30) days after the date of this order. If Plaintiff fails to file an amended

17

complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE